**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ECI SOFTWARE SOLUTIONS, INC.,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CASE NO. 3:18-cv-02758-S** |
| **JOHN PLYLER PLUMBING AND** | § | |
| **HARDWARE, INC.; OLSHAN** | § | |
| **LUMBER COMPANY; PROSPERITY** | § | |
| **COMPUTER** | § | |
| **SOLUTIONS, LLC; GREG** | § | |
| **MATATALL; WADE FRAZIER; AND** | § | |
| **ED BALDRIDGE,** | § | |
| | § | |
| **Defendants.** | § | |

---

**PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR ORDER REQUIRING PRE-DISCOVERY IDENTIFICATION OF**
**TRADE SECRETS**

---

Christopher M. LaVigne
Texas Bar No. 24026984
lavignec@gtlaw.com
P. William Stark
Texas Bar No. 24046902
starkb@gtlaw.com
**GREENBERG TRAURIG LLP**
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-3601

Kurt A. Kappes
California Bar No. 146384
kappesk@gtlaw.com
**GREENBERG TRAURIG LLP**
1201 K Street, Suite 1100
Sacramento, CA 95814
Telephone: (916) 442-1111
Facsimile: (916) 448-1709

Mary-Olga Lovett
State Bar No. 00789289
lovettm@gtlaw.com
Rene Trevino
State Bar No. 24051447
trevinor@gtlaw.com
**GREENBERG TRAURIG LLP**
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505

**ATTORNEYS FOR PLAINTIFF**
**ECI SOFTWARE SOLUTIONS, INC**

---

**PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR ORDER**
**REQUIRING PRE-DISCOVERY IDENTIFICATION OF TRADE SECRETS**

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................ 1

II.   BACKGROUND ............................................................................................. 2

III.  APPLICABLE LEGAL STANDARD .......................................................... 5

IV.   ARGUMENTS AND AUTHORITIES ......................................................... 6

    A.   Defendants Failed to Meet and Confer before Filing Their Discovery Motion. ............... 6

    B.   Defendants Waived Pre-Discovery Identification of Trade Secrets and Their Motion is
    Untimely. .................................................................................................... 6

    C.   Defendants Cannot Justify a Deviation from Standard Discovery Procedures. ................ 7

    D.   ECI Has Identified Its Trade Secrets with Reasonable Particularity. .............................. 8

        1.   The Apparently Uncontested Trade Secret Designations ........................................... 11

            a.   AMP Code ......................................................................................... 11

            b.   Superuser Login ................................................................................. 13

        2.   The Apparently Contested Trade Secret Designations ............................................. 13

            a.   Source Code & Business Logic ............................................................... 14

            b.   Customer Files ................................................................................... 15

            c.   Stolen Drive Information ....................................................................... 16

            d.   E-Mail Data ...................................................................................... 17

            e.   ECI Laptop Data ................................................................................ 17

V.    CONCLUSION .............................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*DeRubeis v. Witten Techs., Inc.*,
   244 F.R.D. 676 (N.D. Ga. 2007) ............................................................................. 8

*Huawei Techs. Co. v. Huang*,
   2018 U.S. Dist. LEXIS 136929 (E.D. Tex. Aug. 14, 2011)..................................................... 5

*MCR Oil Tools, LLC v. Spex Offshore, Ltd.*,
   No. 3:18-cv-00731-M, 2018 U.S. Dist. LEXIS 155826 (N.D. Tex. Sep. 13, 2018)................ 5

*Polydyne Software, Inc. v. Celestica Int'l, Inc.*,
   No. A-14-CV-979-LY, 2014 U.S. Dist. LEXIS 188703 (W.D. Tex. Dec. 31, 2014).......... 5, 7

*StoneEagle Servs. v. Valentine*,
   No. 3:12-cv-1687-P, U.S. Dist. LEXIS 188512 (N.D. Tex. June 5, 2013).............................. 9

*StorageCraft Technology Corp. v. Symantec Corp.*,
   No. 2:07-cv-856-CW, 2009 U.S. Dist. LEXIS 10608 (D. Utah Feb. 11, 2009) ...................... 9

*Uni-Systems, LLC v. U.S. Tennis Ass'n*,
   No. 17-CV-147, 2017 U.S. Dist. LEXIS 148680 (E.D.N.Y. Sep. 13, 2017)...................... 8, 19

*United Servs. Auto. Ass'n v. Mitek Sys., Inc.*,
   289 F.R.D. 244 (W.D. Tex. 2013)........................................................................... 5

**Rules**

FED. R. CIV. P. 26(b)(1) ................................................................................................ 5

Plaintiff ECI Software Solutions, Inc. ("ECI"), hereby responds in opposition to Defendants' Motion for Order Requiring Pre-Discovery Identification of Trade Secrets ("Motion") [Dkt. 112]. In support thereof, ECI states as follows:

## I.   **INTRODUCTION**

Defendants' Motion asks a basic question, and the answer compels that the Motion be denied: Through its pleadings and discovery responses, has ECI sufficiently identified its trade secrets to put Defendants on notice of its claims and to allow Defendants to discern the relevancy of ECI's discovery requests? Clearly, the answer is "yes."

Even Defendants appear to agree. Despite filing a two-page Motion and fourteen-page Brief in Support, Defendants do not identify a single deficiency in the way ECI has identified the trade secrets that Defendants misappropriated. Defendants instead cherry-pick citations to case law, block quote ECI's discovery responses, and then flatly conclude, "These alleged information categories are not trade secrets." [Dkt. 111 at 11.] That is all Defendants can muster. Defendants' Motion lacks any analysis, let alone any attempt to identify what additional information ECI must purportedly provide to identify its trade secrets with "reasonable particularity." The Motion—a pure delay tactic—should be denied, and discovery should proceed accordingly.

Defendants' claim of ignorance is absurd. Defendants are intimately familiar with the trade secrets in this case. Defendant Greg Matatall ("Matatall") created the Advantage software at issue. After previously misappropriating ECI's trade secrets in 2016, Matatall and Defendants Prosperity Computer Solutions, LLC ("Prosperity") and Wade Frazier ("Frazier") entered into a settlement agreement wherein they agreed, among other things, not to use ECI's "Trade Secrets"—a defined term in the settlement agreement. Similarly, Defendant Ed Baldridge ("Baldridge") is party to a settlement agreement with ECI.

What is more, ECI's pleadings and discovery responses thoroughly identify the trade secrets that Defendants misappropriated. ECI has provided the "reasonable particularity" some courts require in appropriate trade secrets cases. Defendants have notice of the trade secrets at issue. They have sufficient information to determine whether ECI's discovery requests seek relevant and proportional information. Any claim to the contrary is untenable, and to require ECI to provide more at this early stage—and as a predicate to engaging in discovery—would be unreasonable and contrary to the law.

Defendants' Motion is nothing more than a dilatory tactic designed to delay discovery while deadlines in the Scheduling Order rapidly approach and to prejudice ECI's ability to move this case forward. Their obstruction should not be permitted.

## II.      BACKGROUND

ECI's factual allegations are thoroughly spelled out in its Second Amended Complaint, and they do not need to be repeated here wholesale. But some facts—particularly the egregious nature of the trade secret misappropriation involved—reflect the insincerity of Defendants' Motion and are set forth herein for ease of reference.

In 2007, ECI bought the assets of Advantage Business Computer Systems, Ltd. from Matatall and his family members and business partners for tens of millions of dollars. [Dkt. 92 ¶¶ 1, 3.] The "primary asset" ECI acquired was the Advantage software, which Matatall "designed, developed, and architected." [*Id.* ¶ 1.] For several years after the purchase, ECI kept Matatall and his friends and family members on its payroll. [*Id.*] In fact, ECI's "Big Sandy office" was run out of a building on Matatall's property, 200 yards from his house. [*Id.* ¶ 35.] But when Matatall and his wife were laid off by ECI in 2015, Matatall sought revenge. With Frazier, Matatall formed a competitor company, Prosperity, using ECI's Advantage software (which

Matatall designed and developed) as its base and sought to poach ECI's intellectual property and customers. [*Id.* ¶ 37.]

Prosperity hired away ECI employees who, while still employed by ECI, illegally copied "information related to ECI's customers, prospects, pricing, products, margins, profit percentages, credit profiles, preferences, and markets." [*Id.* ¶ 42.] They copied ECI's trade secrets to an external drive, accessed data remotely, and e-mailed ECI's data to themselves on their personal accounts. [*Id.* ¶¶ 42 44.] Defendants, or someone working at their behest, later entered ECI's "Big Sandy office" (*i.e.*, Matatall's building leased to ECI) over the weekend of July 4, 2016 and stole certain of ECI's customer files and a hard drive containing proprietary information critical to Advantage software. [*Id.* ¶ 35.]

This is not the first lawsuit that ECI has been forced to bring to stop Defendants from misappropriating ECI's trade secrets and intellectual property. Prosperity, Matatall, Frazier, and Baldridge are already parties to settlement agreements with ECI in prior litigation. As part of their settlement in that prior litigation, Prosperity, Matatall, and Frazier agreed, among other things, that they and Prosperity's affiliates "shall never use any of ECI's **Trade Secrets** [a defined and agreed term in the agreement] for any purposes whatsoever." [Dkt. 3 at 6; 3-1 at 96 (emphasis added).][1] None of them have expressed confusion over what that term means. Yet, Defendants now claim that they are so "in the dark" over ECI's claims, [Dkt. 109 at 4], that they cannot prepare for depositions in this case and that discovery must stop completely so they can understand ECI's allegations.

---

[1]    This settlement agreement was filed under seal in conjunction with ECI's Application for Temporary Restraining Order, filed on August 3, 2018. [Dkt. 3.]

Far from being confused, Defendants understand ECI's allegations and trade secrets well enough to answer each of ECI's complaints and to draft and serve 113 requests for production, one request for inspection, and a combined 47 interrogatories on ECI. In actuality, Defendants' Motion is simply an impermissible delay tactic. Indeed, the Court already declined to grant the relief Defendants seek. In the December 17, 2018 Joint Report submitted under Rule 26(f), Defendants asked for "an order requiring ECI to identify its trade secrets with reasonable particularity prior to the discovery beginning in this case[.]" [Dkt. 71.] Just over a month later, on January 31, 2019, the Court impliedly denied Defendants' request by entering a Scheduling Order that did not include Defendants' request. [Dkt. 75.] Rather than promptly asking the Court to reconsider its decision, Defendants four months before filing their Motion.

These dilatory efforts to stymy discovery are improper. With Plaintiff's expert witness designations due in approximately three and a half months and discovery closing in approximately six,[2] Defendants have refused to fully respond to written discovery requests[3] and produce documents,[4] and Matatall and Baldridge are resisting their duly noticed depositions in violation of the Federal Rules and the parties' agreement.[5]

---

[2] Although the Scheduling order [Dkt. 75] set August 2, 2019 as the deadline for disclosure of experts by the party with the burden of proof and November 22, 2019 as the close of discovery, the parties have extended these and other deadlines by agreement.

[3] Defendants' claim that ECI has served 766 requests for production on Defendants is misleading. [*See* Dkt. 111 at 7.] ECI served 166 requests for production on Prosperity, and ECI's First Request for Production to Defendants Greg Matatall, Wade Frazier, and Ed Baldridge each contained 200 requests for production, many of which were the same or substantially similar to the requests served on Prosperity. To reach the claimed 766 requests, Defendants apparently triple counted ECI's requests to the Individual Defendants and then added that figure to the requests to Prosperity in a plain effort to exaggerate the number of requests from ECI.

[4] Defendants' numerous discovery deficiencies are already the subject of a lengthy letter ECI was forced to send to Defendants in the hope of obtaining Defendants' compliance with their discovery obligations without the necessity of his Court's intervention.

[5] A hearing is set on Defendants' motions on July 12, 2019.

**PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR ORDER REQUIRING PRE-DISCOVERY IDENTIFICATION OF TRADE SECRETS—Page 4**
*ACTIVE 43769353v5*

III.        **APPLICABLE LEGAL STANDARD**

Although Texas courts have allowed it in certain cases, "neither Texas nor Fifth Circuit law requires pre-discovery identification of trade secrets." *Polydyne Software, Inc. v. Celestica Int'l, Inc.*, No. A-14-CV-979-LY, 2014 U.S. Dist. LEXIS 188703, at *6 (W.D. Tex. Dec. 31, 2014). Nor is it standard practice in this District: "**Defendants do not cite, nor has this Court found, Fifth Circuit authority standing for the proposition that a particularized identification of trade secrets must be made before discovery is undertaken.**" *MCR Oil Tools, LLC v. Spex Offshore, Ltd.*, No. 3:18-cv-00731-M, 2018 U.S. Dist. LEXIS 155826, *13 (N.D. Tex. Sep. 13, 2018) (Lynn, C.J.) (emphasis added). Rather, Rule 26 provides the default procedure for discovery. *See* FED. R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense."). Ordering pre-discovery identification of trade secrets is merely a discretionary case management tool available to courts under Rule 16 in cases "that may involve complex issues or unusual proof problems." *United Servs. Auto. Ass'n v. Mitek Sys., Inc.*, 289 F.R.D. 244, 249 (W.D. Tex. 2013). To obtain an order for pre-discovery identification of trade secrets, the defendant must show "that ordinary discovery procedures will prove inadequate to the task in this case." *Id.* at *7; *see also Huawei Techs. Co. v. Huang*, 2018 U.S. Dist. LEXIS 136929, at *11 (E.D. Tex. Aug. 14, 2011) ("The Court finds that ordering Plaintiffs to more specifically identify each alleged misappropriated trade secret is unnecessary at this time. Plaintiffs have answered Interrogatory No. 1 to the extent reasonably possible under the circumstances of this case.").

## IV.    ARGUMENTS AND AUTHORITIES

**A.    Defendants Failed to Meet and Confer before Filing Their Discovery Motion.**

As set forth in ECI's Response in Opposition to Defendants' Motion to Quash Deposition Notices and Motion for Protective Order [Dkt. 115], Defendants failed to make a good-faith effort to engage in a meaningful, substantive conference with ECI's counsel before filing their Motion. [*See id.* at 10-15.]  Rather than re-reciting the facts and argument herein, ECI incorporates them by reference herein pursuant to Rule 10(c).

Defendants failed to comply with the letter or spirit of the Federal Rules, the Northern District's Local Rules, or this Court's Requirements. The Motion should be denied for Defendants' failure to comply with the fundamental meet-and-confer requirements

**B.    Defendants Waived Pre-Discovery Identification of Trade Secrets and Their Motion is Untimely.**

Even if Defendants' Motion otherwise had merit, which it does not, Defendants waived the relief sought by waiting until the parties were in the midst of discovery to finally seek "***pre-discovery***" identification of ECI's trade secrets. Even where appropriate, a key—even definitive—aspect to pre-discovery identification of trade secrets is that it occurs before discovery has begun, not mid-stream after discovery has commenced.

Defendants previously sought "an order requiring ECI to identify its trade secrets with reasonable particularity ***prior to the discovery beginning in this case***" in the December 17, 2018 Joint Report submitted under Rule 26(f). [Dkt. 71 (emphasis added).] The Court considered and declined to enter such an order at the January 4, 2019 initial scheduling conference and, on

January 31, 2019, impliedly denied Defendants' request by entering a Scheduling Order that did not include Defendants' request. [Dkt. 75.]

Rather than promptly filing a motion seeking pre-discovery identification of ECI's trade secrets before the parties began discovery, Defendants waited approximately four months before filing their Motion. When Defendants finally filed their Motion, the case was no longer pre-discovery. To the contrary, in addition to discovery served and depositions sought by ECI, Defendants themselves affirmatively sought discovery from ECI by serving 113 requests for production, one request for inspection, and a combined 47 interrogatories.

Defendants allowed the time for pre-discovery identification of trade secrets to pass. The parties are actively engaged discovery. Defendants cannot delay filing their motion for months, respond to ECI's discovery requests, serve numerous discovery requests on ECI, and then unilaterally suspend ECI's discovery under the pretext of seeking *pre*-discovery relief. By waiting to file their Motion, Defendants waived any pre-discovery identification of ECI's trade secrets.

## C.     Defendants Cannot Justify a Deviation from Standard Discovery Procedures.

This is hardly a case with such "unusual proof problems" that standard discovery procedures must be jettisoned. Defendants do not explain why additional pre-discovery identification of trade secrets is required here. Instead, their argument appears to be just that "because other courts have permitted such a pre-discovery procedure in a trade secret case, the procedure is also warranted here." *Polydyne Software*, 2014 U.S. Dist. LEXIS 188703, at *7. That is not enough. Defendants have "made no showing that ordinary discovery procedures will prove inadequate to the task in this case." *Id.* Defendants do not explain how ECI's identification of its trade secrets are somehow deficient, the way in which it must be improved, or why additional information is needed to respond to discovery requests and sit for fact witness deposition. Rather

than carry that burden, Defendants rest entirely on conclusory claims that ECI's trade secret identification is somehow not enough.

Tellingly, this is the first time Defendants have sought any relief regarding their purported confusion. ECI has filed an original complaint and two amended pleadings, and Defendants answered each of them. Despite having three opportunities to do so, Defendants never challenged any of ECI's pleadings for failure to state a claim nor have they sought a more definite statement. Since Defendants were able to answer ECI's three complaints and serve 113 requests for production, one request for inspection, and a combined 47 interrogatories on ECI, they are certainly capable of participating in discovery. *See Uni-Systems, LLC*, 2017 U.S. Dist. LEXIS 148680, *15 ("Most of the defendants have answered the Complaint, suggesting an ability to defend the action, and the Trade Secret Defendants were able to discern enough information about the alleged trade secrets to draft 52 follow-up questions for which they would like more detail.").

**D.      ECI Has Identified Its Trade Secrets with Reasonable Particularity.**

Notwithstanding Defendants' claims, ECI *has* identified its trade secrets with reasonable particularity. Requiring ECI to provide more would be unreasonable and unnecessary. "Although definitions vary, that standard generally requires that the plaintiff provide enough information about the alleged trade secrets (1) to put the defendant on notice of the nature of plaintiff's claims, and (2) to allow defendant to discern the relevancy of any discovery requests." *Uni-Systems, LLC v. U.S. Tennis Ass'n*, No. 17-CV-147, 2017 U.S. Dist. LEXIS 148680, at *14 (E.D.N.Y. Sep. 13, 2017); *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 681-82 (N.D. Ga. 2007) ([T]his approach will not require Witten to list thousands of trade secrets in order to ensure that its disclosure sufficiently covers the range of trade secrets that might eventually arise.").

In *StorageCraft Technology Corp. v. Symantec Corp.*, for example, the court found that the plaintiff satisfied the "reasonable particularity" requirement by "provid[ing] an identification of the source code it believes is protected by stating that it is 'all source code received under the License Agreement or derived or created from such code' minus the publicly available code which StorageCraft provided the Copyright Office." No. 2:07-cv-856-CW, 2009 U.S. Dist. LEXIS 10608, at *10 (D. Utah Feb. 11, 2009). The court explained, "Now this is not a 'bit by bit' identification of the code, but the court finds it is sufficient at this stage to meet the reasonable particularity requirement." *Id.*

ECI has defined its trade secrets with much more than "generic descriptions of categories." *Uni-Systems, LLC,* 2017 U.S. Dist. LEXIS 148680, at *14-15 (recognizing that "generic descriptions of categories are insufficient to provide defendants with information sufficient to satisfy the 'reasonable particularity' standard"). Each of ECI's pleadings and its interrogatory answers place Defendants on notice of the trade secrets they are alleged to have misappropriated. ECI's identifications allow Defendants to readily discern the relevancy of ECI's discovery requests as they relate to those misappropriated trade secrets. They also make clear that ECI's trade secrets are different from public domain filings and that they are novel and unique. *See StoneEagle Servs. v. Valentine*, No. 3:12-cv-1687-P, U.S. Dist. LEXIS 188512, at *12-13 (N.D. Tex. June 5, 2013) (concluding under different facts that trade secret plaintiff failed to provide this level of detail).

ECI's descriptions are all that is required of a trade secret plaintiff at this stage. Because ECI is alleging that Defendants misappropriated this trade secret information from ECI, some information will remain unknown to ECI until it has conducted discovery and learned exactly what Defendants took. But requiring that ECI know every detail of the exact information that

Defendants misappropriated, without giving ECI any opportunity to conduct discovery, would effectively prevent ECI from ever pursuing its claim.

Tellingly, Defendants do not say what other information ECI must provide to meet their standard. They state only that "while ECI identified some trade secrets categories it failed to do so with respect to many other categories." [Dkt. 112 at 1.] Defendants do not identify which trade secrets they believe have been sufficient described and which ones have not (or why not). Instead, Defendants rely on conclusory assertions that, in their opinion, what ECI has provided thus far is simply not enough.

Without precisely saying so, Defendants seem to object to the sufficiency of five of ECI's seven trade secret designations: (1) Trade Secrets in the Source Code & Business Logic; (2) Trade Secrets in the Customer Files; (3) Trade Secrets in E-Mail Data; (4) Trade Secrets in the ECI Laptop Data; (5) Trade Secrets in the Stolen Drive Information. [*See* Dkt. 111 at 10-11.] Defendants do not identify how the information ECI provided for each of these designations could be insufficient but state only that "[t]hese alleged information categories are not trade secrets." [*Id.*] Presumably, these five are the "many other categories" that Defendants claim are deficient. The Court and ECI are left to guess as to the nature and extent of the alleged deficiencies.

Notably, these five categories with which Defendants apparently take issue include the trade secrets that Defendants physically misappropriated—either through illegal file transfers or by physical theft—from the "Big Sandy office" over the weekend of July 4, 2016. ECI has provided as much information as possible to identify the trade secrets involved. But without discovery on the specific materials that Defendants took, ECI cannot be expected to provide additional information at this point in the litigation.

Each designation of ECI's trade secrets is addressed, in turn, below.

1.      **The Apparently Uncontested Trade Secret Designations**

    a.      **AMP Code**

Defendants do not identify the "AMP Code" trade secret in their Motion or Brief in Support and presumably concede that it has been adequately identified.

ECI explains that "the Advantage software installed on a customer's server contains the expiration date of the customer's license expiration file ('License Expiration File'). When a new customer purchases a license or an existing customer renews a license, ECI uses the AMP Server to send a proprietary and secret code, or a series of executable commands, (the 'AMP Code') to the customer's server that sets the proper expiration date in the License Expiration File." [Dkt. 92 ¶ 31.] ECI's interrogatory answers add to this description and identify the AMP Code as, "A proprietary and secret code, or a series of executable commands used to set the proper expiration dates in the license expiration files in the Advantage Software on customers' servers." [Dkt. 111-2, 3, 4, 5.]

The AMP Code is critical to the value of the Advantage software. "If the AMP Code were revealed, ECI would be powerless to stop businesses from stealing the Advantage software by using the AMP Code to change their License Expiration Files without purchasing and paying for a license from ECI." [Dkt. 92 ¶ 33.] Given that, ECI goes to great lengths to keep the AMP Code a secret. It thus identified nine separate measures that it takes to protect its trade secret:

> ECI takes significant measures to maintain the secrecy of the AMP Code and the other trade secrets embodied in and associated with the Advantage software by, among other things, **[1]** requiring employees to sign confidentiality and non-disclosure agreements; **[2]** restricting access to the AMP Code; **[3]** requiring password login to access the AMP Code; **[4]** designing the Advantage software in a way that requires knowledge of a proprietary and confidential programming language to use the AMP Code and conduct other key activities within the Advantage software; **[5]** requiring terminated employees to return all ECI property and be removed from ECI's security systems; **[6]** assigning usernames and

passwords for all computer users and requiring passwords to be at least seven characters, including an uppercase letter, lowercase letter, and number; **[7]** prohibiting computer access after a certain number of failed attempts; **[8]** using Windows "Active Directory Groups" to control access to various network drives and requiring all changes to an employee's user access be approved by an IT administrator; and **[9]** maintaining an acceptable use policy relating to computer, internet, and email usage.

[*Id.* ¶ 32 (emphasis added).]

Notably, the AMP Code was the foundation of the Agreed Temporary Restraining Order and Agreed Temporary Injunction *to which Defendants agreed to be bound*. Unsurprisingly, Defendants never claimed ignorance of what the trade secret is or what they are enjoined from doing. On August 13, 2018, the Court entered an Agreed Temporary Restraining Order and Order Setting Hearing for Preliminary Injunction. Among other things, the agreed TRO enjoined defendants from "accessing, using, or tampering with the Advantage software for any purposes whatsoever . . . including, but not limited to, use of **the AMP Code**, or the series of executable commands that are used to reset the license expiration date in the Advantage software[.]" [Dkt. 13 at 3.] On August 20, 2018, the parties submitted a Joint Motion to Extend Temporary Restraining Order and Reset Preliminary Injunction Hearing. [Dkt. 30.]

On September 12, 2018, the Court entered an Agreed Preliminary Injunction. That agreed order prohibits Defendants from "using **the AMP Command**, for any reason whatsoever" and from "disclosing **the AMP Command** to any third party in a manner that is inconsistent with the Orders of this Court." The injunction defines the "AMP Command" as "the executable command used to reset the license expiration date on a user's version of the Advantage Software." [Dkt. 49.] Defendants agreed to be bound by the terms of that order—and remain bound by its terms— and have never objected that the order insufficiently describes what Defendants are enjoined from doing.

ECI sufficiently identified the AMP Code trade secret.

### b.    Superuser Login

As with the AMP Code trade secret, Defendants do not identify the "Superuser Login" trade secret in their Motion or Brief in Support and presumably concede it has been adequately identified.

ECI explains that "conducting certain activities in the Advantage software requires logging into the superuser account that has access to all functions and files on the server with the superuser login (the 'Superuser Login'), or, in certain limited circumstances logging into a customer-specific account created by ECI with similar functionality to the superuser account." [Dkt. 92 ¶ 34.] ECI's interrogatory answers further describe this as, "The login credentials (username and password) for the superuser account that allows access to all parts of the Advantage Software including those portions that are not accessible with ordinary logins." [Dkt. 111-2, 3, 4, 5.] "The password for the Superuser Login is kept under ECI's control and only known to a limited number of key ECI employees." [Dkt. 92 ¶ 34.]

ECI has sufficiently identified the Superuser Login trade secret.

### 2.    The Apparently Contested Trade Secret Designations

In contrast with the AMP Code and Superuser Login trade secrets, Defendants appear to take issue with the other five of the seven designations that ECI has identified as misappropriated by Defendants. But in challenging these identifications, Defendants say nothing beyond, "These alleged information categories are not trade secrets." [Dkt. 111 at 11.] In making even that conclusory statement, Defendants miss the point.

While the categories ECI used to identify the trade secrets are not trade secrets in and of themselves, the information ECI identified are trade secrets. ECI simply grouped the trade secrets

into categories for ease of identification and reference. Within each description, ECI identified the trade secrets with reasonable particularity. What is more, identifying the exact and extensive trade secret information that Defendants misappropriated is impossible until ECI conducts discovery. ECI can only say what information Defendants had access to misappropriate and that Defendants misappropriated *something*. Requiring ECI to identify the precise information Defendants misappropriated, item by item and line by line, before conducting sufficient discovery would be unreasonable and make prosecution of this case impossible. *See DeRubeis v. Witten Techs.*, 244 F.R.D. 676, 680 (N.D. Ga. 2007) (recognizing that if a plaintiff is required "to identify the trade secrets at issue without knowing which of those secrets have been misappropriated, it is placed in somewhat of a 'Catch-22'").

### a. Source Code & Business Logic

The "Source Code & Business Logic" trade secrets include "the underlying source code including, but not limited to, proprietary algorithms, workflows, and database structures (the "Source Code & Business Logic")" that Defendants accessed and that Defendants replicated to create the Prosperity ERP. [Dkt. 92 ¶ 81.] ECI specifically identifies in its interrogatory answers the "proprietary algorithms, workflows, and database structures" that make up that Source Code and Business Logic:

> Proprietary algorithms, workflows, and database structures in the Advantage Software. Specifically, this includes the dbrslexe coding, the dbrslexe programming language, the dbrslexe compiler, the peripheral interfaces (i.e. drivers), and release notes indicating bug fixes and enhancements. This also includes the following versions of the Advantage Legacy Software: 1312.001, 1312.002, 1312.003, 1312.004, 1312.005, 1312.006, 1312.007, 1312.008, 1312.009, 1312.010, 1312.011, 1312.012, 1312.013, 1312.014, 1312.015, 1312.016, 1312.017, 1312.018, 1312.019, 1312.020, 1312.021, 1312.022, 1312.023, 1312.024, 1312.030, 1312.031, 1312.032, 1312.033, 1312.034, 1312.035, 1312.036, 1312.037, 1312.038, 1312.039, 1312.040, 1312.041, 1312.042, 1312.043, 1312.044, 1312.045, 1312.046, 1312.047. This also includes

database architecture, executable commands, and workflows and functionality for particular customers. The database architectures of the Advantage Software utilize a unique and proprietary structure consisting of over 650 separate data tables for Advantage NexGen and 586 data tables for the Advantage Legacy Software and these are generally kept under ECI's control and is not generally known outside of ECI. To extract data from databases in a manner that allows the data to be used requires knowledge of this unique, proprietary structure and the interrelation between and amongst the over 650 data tables and 586 data tables, including, but not limited to knowledge of (i) which data to extract; (ii) from which precise table(s); and (iii) how to combine that data in which particular order(s) to ensure that the data will be combined in precisely the correct manner to produce the desired results. Stated differently, the user extracting the data must know, from the over 650 data tables and 586 data tables, the particular inputs and sequences or combinations necessary to achieve the desired results or outputs.

[Dkt. 111-2, 3, 4, 5.] ECI has sufficiently identified the Source Code & Business Logic trade secret, and requiring ECI to provide more information than this would be needless. ECI would be required to identify each command that extracts and combines data from the hundreds of data tables (a combined 1,236 data tables). Requiring ECI to list lines and lines of code would serve no purpose. And, conversely, that information would not convey any benefit on Defendants (other than prejudicing ECI through increased litigation costs and further delay).

> **b.    Customer Files**

The "Customer Files" include the "customer files containing specific and proprietary information relating to certain customers including descriptions of customer-specific modifications to the Advantage software (the "Customer Files")" that Defendants (or someone at their behest) stole over the July 4, 2016 weekend from ECI's "Big Sandy office," which was located on Matatall's property and to which Matatall had access. [Dkt. 92 ¶ 48.] ECI's interrogatory answers further describe these trade secrets as, "Proprietary information relating to Costrite, Ltd. and ABACO Groceries & Hardware, Ltd. including, but not limited to, descriptions of customer-specific modifications to the Advantage Software, deep scoping and developer notes

that were stolen from ECI's Big Sandy office over the weekend of July 4, 2016." [Dkt. 111-1 at 7-8, 111-2 at 7 & 13, 111-3 at 7, 111-4 at 7.] When asked to identify "every customer whose information you alleged was contained in Customer Files," ECI again identified Costrite, Ltd. and ABACO Groceries & Hardware, Ltd. [Dkt. 111-2 at 13.]  This information sufficiently provides Defendants with reasonable particularity of which trade secrets are at issue. Requiring more would be unreasonable, as ECI cannot recite the entire contents of files which were stolen until it conducts discovery.

### c.    Stolen Drive Information

The "Stolen Drive Information" also includes trade secrets that were stolen by Defendants (or someone at their behest) over the weekend of July 4, 2016. [Dkt. 92 ¶ 35.]  During that weekend, "a hard drive containing code from the Advantage software including, but not limited to, the boot information necessary to launch the development code for ECI's Advantage system and containing the most recent version of a development copy of the Advantage software source code was stolen from ECI's Big Sandy office, to which Matatall had access[.]" [*Id.* ¶ 48.] The stolen trade secrets include "proprietary boot information necessary to launch the development code for ECI's Advantage Software and proprietary information in the most recent version of a development copy of the Advantage Software source code." [Dkt. 111-1 at 8, 111-2 at 7, 111-3 at 7, 111-4 at 7.] This proprietary boot information is customer-specific, "with different customers having different, customized levels and combinations of functionality."  [Dkt. 92 ¶ 50.] It is critical to the Advantage software, which "is an original work of authorship fixed in a tangible medium of expression from which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device" and the subject of registered copyrights. [*Id.* ¶ 21.]

As ECI explained in its interrogatory answers, "ECI has not yet fully discovered the extent and details" regarding the theft of these trade secrets. [Dkt. 111-2 at 7.] As such, ECI is unable at this early stage to identify specifically what information was taken. As with the Customer Files, requiring more would be unreasonable, as ECI cannot recite the entire contents of the hard drive that was stolen until it conducts discovery. ECI's identification sufficiently provides Defendants with reasonable particularity of which trade secrets are at issue, and requiring ECI to provide greater specificity would require ECI to prove its case before it has conducted discovery.

### d.   E-Mail Data

The "E-Mail Data" includes trade secrets that former ECI employee Wade Ellison sent to his personal e-mail account after he had accepted employment at Prosperity but while he was still employed by ECI. [Dkt. 92 ¶¶ 43-44.] The e-mailed data included "the structure for the implementation of a support tool for the Advantage software and documents related to the Advantage software general ledger . . ." [*Id.*] ECI's interrogatory answers further describe these trade secrets as, "Proprietary information relating to the structure and operation of a support, analysis, and tracking tool for customer support and proprietary documents related to the Advantage Software general ledger (including, but not limited to, daily balancing), among other proprietary information, that were contained in e-mails sent by Wade Ellison to his personal e-mail address." [Dkt. 111-1 at 7, 111-2 at 7, 111-3 at 7, & 111-4 at 7.]

ECI will produce the underlying emails in response to requests for production. ECI has sufficiently identified the Email Data trade secret.

### e.   ECI Laptop Data

The "ECI Laptop Data" was data that former ECI employee and Matatall's nephew David Houser misappropriated from ECI while he was still employed at ECI and shortly after his

employment with ECI ended. [Dkt. 92 ¶ 42.] Two days after he left ECI's employ, Houser "remotely accessed ECI's customer relationship management system. [*Id.*] Once in the system, Houser had unfettered access to all manner of ECI's trade secrets, including, but not limited to, information related to ECI's customers, prospects, pricing, products, margins, profit percentages, credit profiles, preferences, and markets." [*Id.*] Houser was able "to access and produce reports containing and/or analyzing this customer information, as well as derivative information such as buying patterns, customer needs and preferences, and marketing and pricing strategies for customers." [*Id.*] This information included "customer lists, prospect lists, and sales information that David Houser downloaded from Salesforce and an ECI laptop to flash drives. This also includes the list of ECI customers who used Advantage Legacy or NexGen Advantage." [Dkt. 111-1 at 8, 111-2 at 7, 111-3 at 7, & 111-4 at 7.] As with the other trade secrets, ECI has sufficiently identified the ECI Laptop Data trade secret and requiring ECI to identify the specific trade secrets that Houser misappropriated before ECI conducts discovery would be unreasonable.

## V.     CONCLUSION

ECI alleges that each of these trade secrets identified are "of independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information because they enable ECI to effectively market its products in a targeted manner to specific customers and to maintain and improve its relationships with specific customers and potential customers." [Dkt. 92 ¶ 102, 103, 104, 105, & 106.] ECI explains the intensive measures it takes to maintain the secrecy of its trade secrets. [*Id.* ¶ 108.]

The extensive information ECI provided is certainly sufficient for Defendants to be on notice of the nature of ECI's claims and to determine the relevancy of ECI's discovery requests.

Indeed, it was sufficiently particular for each of the Defendants to answer each of ECI's three pleadings—the original, First Amended, and Second Amended Complaints—and craft 113 requests for production, one request for inspection, and a combined 47 interrogatories to ECI. *See Uni-Systems, LLC*, 2017 U.S. Dist. LEXIS 148680, *15. Further, Defendants' statement in their Motion that they "deny having or receiving any of the information, such as the 'stolen' hard drive" [Dkt. 111 at 5.] reveals that Defendants are on sufficient notice to steadfastly deny ECI's allegations and have sufficient understanding of ECI's claims to answer discovery about the facts that ECI alleges.

Defendants' Motion for Order Requiring Pre-Discovery Identification of Trade Secrets should be denied.

Dated:  June 20, 2019

Respectfully submitted,

/s/P. William Stark
Christopher M. LaVigne
    Texas Bar No. 24026984
    lavignec@gtlaw.com
P. William Stark
    Texas Bar No. 24046902
    starkb@gtlaw.com
**GREENBERG TRAURIG LLP**
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-3601

Mary-Olga Lovett
    Texas Bar No. 00789289
    lovettm@gtlaw.com
Rene Trevino
    Texas Bar No. 24051447
    trevinor@gtlaw.com
**GREENBERG TRAURIG LLP**
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505

Kurt A. Kappes
    California Bar No. 146384
    kappesk@gtlaw.com
**GREENBERG TRAURIG LLP**
1201 K Street, Suite 1100
Sacramento, CA 95814
Telephone: (916) 442-1111
Facsimile:  (916) 448-1709

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on counsel of record on June 20, 2019, via the Court's electronic filing system.

/s/ P. William Stark
P. William Stark